38 F.3d 1214
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Amos Adair STILTNER, Defendant-Appellant.
 No. 93-5366.
 United States Court of Appeals, Fourth Circuit.
 Submitted December 20, 1993.
Decided October 14, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Glen M. Williams, Senior District Judge. (CR-92-53-A)
 Dennis Eugene Jones, Lebanon, VA, for appellant.
 Robert P. Crouch, Jr., U.S. Atty., S. Randall Ramseyer, Asst. U.S. Atty., Abingdon, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER, WILKINSON, and NIEMEYER, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 Amos Adair Stiltner appeals from a jury conviction of possession of a firearm after having been convicted of a felony, 18 U.S.C.A. Secs. 922(g)(1), 924(a)(2) (West Supp.1993), and his resulting thirty-four month sentence. Because we find that the court did not abuse its discretion in denying Stiltner's motion to suppress, that he was not denied a speedy trial, and that the court did not err in its jury instructions, we affirm Stiltner's conviction and sentence.
 
 
 2
 A police officer ("McMurray") visited Stiltner's home in March 1990 in his investigation of larcenies in the vicinity. Stiltner admitted McMurray into his home and permitted him to look into his bedroom. During the visit, Stiltner presented McMurray a shotgun and asked him to determine if it was stolen. He told the officer that he obtained the gun at a flea market.
 
 
 3
 McMurray later verified that Stiltner had been convicted of a felony and returned to his residence the following day with other police officers. Stiltner was not at home, but his seventeen-year-old daughter, who was temporarily living with her father, admitted the officers and signed a consent form permitting them to search the residence. The officers did not have a search warrant. Although there was conflicting testimony over where McMurray found it, he retrieved the gun, and Stiltner was subsequently served with a state charge of possession of a firearm after having been convicted of a felony in April 1990. That charge was "nolle prossed" approximately one year later after numerous continuances.[1]
 
 
 4
 Stiltner was charged for the federal offense in October 1992. The court denied his pre-trial motions to dismiss for lack of a speedy trial and to suppress evidence obtained in the search of his home, and a jury convicted him of the crime in January 1993.
 
 
 5
 Stiltner asserts that the court erred in denying his motion to suppress evidence (the gun) obtained in the search of his home because the police officers did not have valid, voluntary consent to the search. Stiltner particularly notes that his daughter who gave the consent was only seventeen years old at the time, had only a ninth grade education, and was a temporary occupant of the premises.
 
 
 6
 Where valid consent is given, Fourth Amendment rights are waived and a search may be conducted without probable cause or a search warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent may be obtained from a "third party who possessed common authority over or sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). Such common authority rests on general access to or mutual use of the place to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in her own right and that the absent target has assumed the risk that the third person may grant this permission to others. United States v. Block, 590 F.2d 535, 539-40 (4th Cir.1978).
 
 
 7
 A warrantless entry is valid even if based upon the consent of a third party whom police reasonably believe has authority over the premises but who does not. See Illinois v. Rodriguez, 497 U.S. 177, 185-89 (1990); see also United States v. Kinney, 953 F.2d 863, 866-67 (4th Cir.), cert. denied, 60 U.S.L.W. 3842 (U.S.1992). The determination of consent to enter must be judged against an objective standard, whether the facts available to the officer warrant a person of reasonable caution in the belief that the consenting party had authority over the premises. Rodriguez, 497 U.S. at 188. When, as in this case, a district court denies a motion to suppress evidence, without making or being requested to make findings of fact, the evidence, looked at in the light most favorable to the government, will sustain the denial. United States v. Bethea, 598 F.2d 331, 334 (4th Cir.), cert. denied, 444 U.S. 860 (1979).
 
 
 8
 When construed in the light most favorable to the government, the daughter's testimony establishes that she had common authority over the premises that the police searched with her consent. She stated that although she had only been living in the trailer with her boyfriend and her father for about three weeks, she was free to come and go as she pleased throughout the trailer, and that she could have guests without asking her father. She also acknowledged her signature on the consent form and was able to read it.[2] Thus, the district court did not abuse its discretion in denying Stiltner's motion to suppress.
 
 
 9
 Stiltner alleges that he was denied a speedy trial because of the time period that elapsed between his arrest on the state charge in March 1990 and the commencement of federal proceedings in October 1992. Claims of pre-accusation delay, fall under the protection of the Due Process Clause of the Fifth Amendment, not the Sixth Amendment as Stiltner alleges. Due process speedy trial claims are evaluated on a case-by-case analysis. Howell v. Barker, 904 F.2d 889, 894-95 (4th Cir.), cert. denied, 498 U.S. 1016 (1990). The defendant must show actual prejudice, and the court must then balance the defendant's prejudice against the government's justification for the delay. Since Stiltner has not alleged any claim of prejudice and since the delay in trying him in federal court was less than twenty-four months, Stiltner's claim of pre-accusation delay is meritless.
 
 
 10
 If we construe Stiltner's claim as one asserting post-accusation delay under the Sixth Amendment, it still fails. Such a claim depends on the balancing of four factors: length of the delay, reasons for the delay, assertion of the right, and prejudice. Barker v. Wingo, 407 U.S. 514, 531-34 (1972). No one factor is conclusive. Id. Only four months elapsed between Stiltner's arrest on the federal charge and his trial, an insignificant delay, if delay at all. As for the other Barker factors, the government offered no explanation for the four-month period and Stiltner promptly asserted the right. Finally, Stiltner offered no evidence of prejudice, which is generally considered the most important of the four factors. See Ricon v. Garrison, 517 F.2d 628, 634 (4th Cir.), cert. denied, 423 U.S. 895 (1975). Therefore, we find that Stiltner was not denied a speedy trial under the Sixth Amendment either, and the court therefore did not err in denying his motion to dismiss on speedy trial grounds.
 
 
 11
 Stiltner makes several claims in regard to jury instructions. First, he alleges that the court improperly denied his proposed jury instruction defining a "shotgun" using the language of 18 U.S.C. Sec. 921(a)(5)(1988). Refusal to give a jury instruction is within the discretion of the trial court. United States v. Hamrick, 995 F.2d 1267, 1271 (4th Cir.1993). Since the court adequately instructed the jury on the elements of the offense and since the definition of a shotgun is not an element of that offense, the court did not abuse its discretion in declining to give the instruction.
 
 
 12
 Stiltner also asserts that he was entitled to a jury instruction defining the term "firearm," but he did not request such an instruction or raise such an objection at trial. Therefore, we review this allegation for plain error. Hamrick, 995 F.2d at 1270. We find none.
 
 
 13
 Finally, Stiltner asserts that the court erred in giving a supplemental instruction to correct its error in instructing the jury on specific intent when Stiltner was charged with a general intent crime. The court stated to the jury:
 
 
 14
 Ladies and gentlemen, I made one error in instructing you on the matter of intent. While knowingly means intentionally, intentionally means a person intends to do what he actually did. It's not a necessary element that the Government prove that it was done with the deliberate intention of violating the law, or with some bad or improper motive that may be involved. All right. You can go back to your room.
 
 
 15
 Stiltner did not object at this time. After they began deliberation, the jury inquired of the court: "We need the legal definition of possession," and "What is accidental possession and intentional possession?" The court issued the jurors copies of its instruction on possession. Stiltner objected to the jury being instructed again that specific intent was not an element of the offense.
 
 
 16
 The necessity, extent, and character of any supplemental instructions are matters within the discretion of the district court. United States v. Horton, 921 F.2d 540, 546 (4th Cir.1990), cert. denied, 59 U.S.L.W. 3850 (U.S.1991). Because we find that the court accurately stated the law in response to jury inquiries, we find no abuse of discretion. For these reasons, we affirm Stiltner's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The defense attorney testified at a hearing on Stiltner's motion to dismiss that he never objected to the continuances and that "several" were based on his own motion
 
 
 [2]
 Even if her testimony could be construed such that she did not possess common authority over the premises, the facts presented to the police officer at the time warranted his reasonable belief under Rodriguez that he had obtained consent to the search from someone with authority over the premises